Harvey J. ALTER, Plaintiff,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.

No. 79 Civ. 6222 (GLG).

United States District Court,
S. D. New York.

Feb. 24, 1981.

Harvey J. Alter, pro se.

John S. Martin, Jr., U. S. Atty., S. D. New York, Leona H. Sharpe, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

The plaintiff in this action challenges the decision of the Secretary of Health and Human Services *granting* him disability status for Social Security benefits, as well as the report and recommendation of the magistrate recommending that the Government's motion for judgment on the pleadings upholding the award be granted. The plaintiff, who has been found totally disabled and unable to engage in any substantial gainful activity by reason of paranoid schizophrenia and other severe mental illnesses, has prosecuted his appeal personally, filing very literate and persuasive papers.

In the original administrative proceedings, plaintiff was found to be totally disabled but, initially, the disability was found to have commenced after the final date on which he could have qualified for benefits. (Plaintiff's Social Security coverage expired on December 31, 1975.) Plaintiff pursued his administrative appellate remedies, submitting additional medical proof, and the defendant ultimately determined that plaintiff's disability commenced on October 9, 1975. Consequently, he was entitled to, and has been receiving, benefits.

The plaintiff prosecutes this judicial appeal claiming that, in fact, he has been totally disabled since January of 1971, under the belief that the earlier disability date would entitle him to greater monthly benefits.[1] It is not at all clear that this is a necessary result, since with a different base year and different factors, it is possible that plaintiff is already receiving the maximum benefits available, regardless of disability

date. However, the Government has submitted no papers on this point so we must assume that there is a real controversy.

■ In his objections to the magistrate's report, the plaintiff seeks an "independent review" of the case. To the extent that he wishes a *de novo* consideration of this action (which is to say, the proceedings before the magistrate), he is entitled to it. To the extent that he seeks (as he does) to have this Court establish the date of onset of disability, compute the correct monthly benefits, and direct that he be given retroactive benefits to that date, along with $500 in court costs and punitive and compensatory damages, he totally misconceives the jurisdiction of this Court in reviewing Social Security awards. We are, of course, confined to a review of the administrative record and may remand only if we find that there was not such relevant evidence that a reasonable mind might accept as being adequate to support the conclusions of the defendant. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■ Looking solely at the administrative record, we cannot say that the defendant's conclusion, that plaintiff established total disability in October of 1975, was unreasonable. As is common in most cases of schizophrenia, the illness was apparently genetic and present, to some degree, throughout the plaintiff's entire life.[2] While plaintiff apparently had a number of childhood difficulties, he did receive a high school equivalency diploma and attended college at night for several years. He served in the army for three and one-half years and worked at various jobs for nine years after his discharge. His mental illness seems to manifest itself in an inability to deal with other people. He stopped working in 1971 and has made little attempt to obtain employ-

---

1. He would not be entitled to any additional retroactive award, since 42 U.S.C. § 423 limits back payments to a one-year period before the application date (after taking into account the waiting period) and plaintiff has already received that maximum benefit.

2. Most cases of schizophrenia are thought to be caused by a complex interaction between inherited and environmental factors. A genetic predisposition is probably necessary. *Merck Manual*, 13th ed., p. 1532.

ment since then, although it would appear that he is quite capable of working at matters of a high intellectual order, providing that he is allowed to work alone and without supervision.[3]

The record indicates that plaintiff did receive some psychiatric treatment from 1967 through February of 1970, when he was diagnosed as suffering from a passive-aggressive personality disorder. (Since plaintiff was, in fact, employed at that time, the issue of his disability at that time does not arise.) Between 1971 and 1975, however, from the administrative record, there are only a few sporadic reports of physicians whose treatments of the plaintiff were so brief that they could not make rational diagnoses. While some medical information was supplied by doctors who treated the plaintiff in 1975 and later, who state, on the basis of the reported history, that he was disabled prior to 1975, the absence of substantial contemporary records to support this conclusion undercuts the value of these opinions.[4] There are only a few bits of information in the administrative record that might have justified an earlier disability date. Doctor Susan Kavaler submitted a letter stating that she treated the plaintiff during 1974–75 at Beth Israel Hospital's Psychiatric Out-Patient Clinic. She spoke of him as having a severe mental illness and functioning on a "minimal level" so that he has remained "completely uncapacitated" [sic]. A psychoanalyst, who treated him in the early part of 1975, stated that plaintiff was not able to function in a work situation. Despite these bits of evidence, it cannot be said that the defendant's conclusion, on the evidence before the agency, that the disability became so extreme as to prevent any gainful employment in October of 1975, was not correct. See Howard v. Weinberger, 489 F.2d 216 (5th Cir. 1974).

The plaintiff's main complaint with the administrative record and the determination of the defendant was that he was diverted into attempting to establish merely a disability prior to December of 1975, and not to establish the earliest possible date of disability, so that he made no attempt to prove it. A review of the record confirms this. For example, the letter from a psychiatrist, Dr. Holmes, which appears to have been quite influential with the Social Security Appeals Council, merely concludes that the plaintiff became disabled during the period necessary to establish a Social Security disability claim. While the plaintiff now contends that the defendant's employees intentionally misled him, since he would be entitled to greater benefits had he established an earlier date, there does not appear to be any substance to this belief.

In these judicial proceedings, the plaintiff has submitted substantial additional medical evidence and arguments for determining that he was actually disabled at a much earlier date. For example, he has submitted an additional letter from Dr. Kavaler, written after the litigation was commenced, indicating that his treatment at Beth Israel actually began in April of 1973 and speaking of his "total breakdown" in January of 1971. In addition, he has submitted opinions obtained last summer from two different expert psychiatrists concluding, on the basis of a review of all his medical records, that he has been disabled since January of 1971. (These were in a sixty-seven page submission made to the magistrate.) Based on these submissions, this Court is reasonably convinced that the plaintiff's disability was complete in the early 1970's. Indeed, he was probably in better medical health when he filed his Social Security application in 1977, and conducted proceedings in 1978, than he had

---

**3.** Since the issue was not considered at the administrative level, we have no occasion to consider whether or not there is any type of substantial gainful employment available to a person with the plaintiff's type of personality disorder.

**4.** The plaintiff argues that an experienced psychiatrist, in a few sessions, can make a diagnosis and a "completely accurate symptomologic history of the patient." The plaintiff expresses a greater confidence in the powers of psychiatrists than there is any reason to accept, or that he, in his own interactions with them, has been willing to accord.

been in the preceding five or six years.[5] However, as noted above, it is the function of the Court simply to review the administrative record and not to accept additional evidence. Moreover, it does not appear that the plaintiff is foreclosed from seeking an administrative review and reopening of the Appeals Council's decision setting disability as of October 9, 1975. Indeed, the Appeals Council wrote the plaintiff a letter on April 25, 1980 inviting him to submit additional evidence. This was approximately one-half year after this action had been commenced and a year and one-half after the Appeals Council's decision. Consequently, the plaintiff apparently still has the option of submitting his additional proofs to the defendant for further consideration. But, on the record before this Court, it cannot be said that there was an absence of substantial evidence to support the defendant's earlier decision.

SO ORDERED.

---

5. Commencing in October of 1978, the plaintiff attended a daily out-patient program at a post-graduate center for mental health, which seemed to ameliorate his problem somewhat.